# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

KAREN S. HITTE,

        Plaintiff

    v.                      C-1-08-295

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 17), defendant's objections (doc. no. 21) and plaintiff's response thereto (doc. no. 19). Plaintiff, a Disability Insurance Benefits claimant, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the defendant denying plaintiff's application for disability insurance benefits. In his Report and Recommendation, the Magistrate Judge concluded that the defendant's decision denying plaintiff disability benefits is not supported by substantial evidence and recommended that the case be remanded for an award of benefits pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I.

Plaintiff filed her application for disability insurance benefits (DIB) in July, 2003. Plaintiff's application was denied initially and upon reconsideration, at which time she requested and obtained a hearing before the Administrative Law Judge (ALJ). The hearing took place on February 2, 2006 and included plaintiff, her counsel and testimony from the Vocational Expert, Brian Womer. Plaintiff received an unfavorable decision in December, 2006 and subsequently processed an appeal to the Appeals Council which refused review in March, 2008. Plaintiff then filed her Complaint with the Court seeking judicial review.

The Magistrate Judge concluded that the proof of disability is strong and opposing evidence is lacking in substance and concluded, based on plaintiff's condition described by Dr. Miller and the testimony of the Vocational Expert, plaintiff is precluded from performing any of the jobs found to be available to her in the national economy. Therefore, the Commissioner failed to meet its burden at Step 5 of the sequential evaluation. The defendant objects to the recommendation of the Magistrate Judge.

**II.**

**Judicial review of the defendant's decision is limited in scope by 42 U.S.C. § 405(g). The Court's sole function under the statute is to determine whether there is substantial evidence to support the defendant's findings of no disability. The defendant's findings should stand, if, after a review of the record in its entirety, the Court finds that the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."** *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Mullen v. Sec. of HHS*, 667 F.2d 524 (6th Cir. 1981), *cert. denied* 461 U.S. 957 91983).

In the defendant's objections, the defendant points out that the Magistrate Judge supported a number of the ALJ's findings, but questions "the rather brief discussion of the ALJ's treatment of plaintiff's physical complaints" and argues the Magistrate Judge's explanation does not fairly state the defendant's concerns about the timing of Dr. Miller's opinion. Defendant concludes Dr. Miller apparently had no further contact with plaintiff after 2003. The defendant has ignored, without explanation, plaintiff's testimony at page 461 of the record.

> Q. **When did you last have that checked by**
> 
> A. **I seen Dr. Miller in December, end of December.**
> 
> Q. **How frequently do you have to see Dr. Miller, when do you see him?**
> 
> A. **I see Dr. Miller but maybe one, I'm going to guess, maybe once a year.**
> 
> Q. **Inaudible**
> 
> A. **I seen him at the end of December.**
> 
> Q. **Of this year, of 2005?**
> 
> A. **Yes. I had a urinary tract infection.**

**The Court finds that the timing explanation is inadequate and the conclusion of the ALJ rejecting Dr. Miller's opinion is not supported by the evidence.**

**At page 479 of the record, the ALJ proposes the following hypothetical question and received the following answers.**

> Q. **All right, Mr. Womer, if we assume a hypothetical person of claimant's age, education and past work experience, and this hypothetical person, there are no physical findings here, but assume the person should not do more than medium exertion, medium exertional - -**

A. Medium?

Q. With the need to be able to alternate positions. The person is limited to low stress jobs not dealing with public, not fast paced, no production quotas, minimal contacts with supervisors and co- workers. The job should not have above average production expectations, is limited to simple tasks not requiring extended periods of concentration. First of all, can a person with this functional capacity be able to perform claimant's past work?

A. In my opinion, no.

Q. Any other jobs that would fit the hypothetical?

A. Yes. With those limitations at the medium exertional level, there are approximately 5,000 positions total. Examples would be a laundry worker or hand packager. With those restrictions at the light exertional level, you'd have approximately 6,000 positions total. Examples would be assembly machine tender or an injection molding machine tender, and at the sedentary exertional level you'd have approximately 1,200 positions total. Examples there would be a wire insulator or a microfilm document preparer.

Q. If the person, what is the maximum absences tolerated in a workplace, average?

A. You mean absent from work for the day?

Q. Yes.

A. Typically, in the kinds of jobs we're talking about, no more than a couple fo (sic) weeks a year maximum.

Q. If the person needed easy access to restrooms, how would that impact the workplace and by easy access, I mean the same floor, wouldn't have to go outside or outside the work premises to go to the bathroom?

A. Well, that would have no change.

Q. Is our testimony consistent with the DOT?

A. We have some limitations posed in the hypothetical that the DOT does not address, such as alternating positions, as well as specific definition of low stress which you've set forth, and so I reconciled the difference from my opinion based on my experience and job placement in vocational rehabilitation.

At pages 481-482 of the record, the VE was presented with further information and he reversed his opinion.

> Q. Mr. Womer, if I were to ask you to further consider in the hypothetical question asked by Judge Pedilla that not only would one need to have access to restroom facilities, but would be expected or would need to use those restroom facilities on the average of at least once per hour for five minutes every hour, would that be tolerated in the jobs you identified?
>
> A. I don't think so, no.
>
> Q. Again, on a clarification of maximum absenteeism that would be tolerated - -
>
> A. U-huh.
>
> Q. You said no more than a couple of weeks per year maximum, so is a couple of weeks a total of 14 days or approximately that or a little, not much more than one time per month?
>
> A. Yes, that sounds about right. Yes. I would agree with that.
>
> Q. Even two times per month on average would not be tolerated?
>
> A. That's correct.

**Q. Do all of the jobs require an individual to be able to be prompt and regular in attendance?**

**A. Yes.**

**Q. Do all of the jobs require an individual to be able to respond appropriately to customary work pressures?**

**A. Yes, in the sense, I mean, obviously, they require a person to be on task and working, you know, up to 40 hours a week, so yes.**

**Q. Okay. Do all those jobs require an individual to be able to complete a normal workday and work week by performing at a consistent pace without an unreasonable number and length of rest periods?**

**A. Yes.**

**Q. And again, I think you've indicated that even once per hour of more than five minutes would be unreasonable.**

**A. Yes.**

**Q. And not tolerated?**

**A. That's correct.**

**The ALJ stated in the hypothetical question to the VE "there are no physical findings here" (record, p. 479). At page 475 of the record, the following testimony appears.**

> Q. All right, so they took the bladder out and now you have this ongoing problem using the ostomy bag?
>
> A. Now I have, now I have where the ostomy bag don't like me and I went back to work and it would fall off, and I'd drain them. I mean like three times a night, it would just fall off and urine running all over me, and wet clothes, and everywhere I go I have to take extra clothes, extra padding, was stuff, that's why I don't do nowhere.

**If there was any doubt that this physical condition existed, the ALJ could have observed the condition. The Court finds the conclusion that there are no physical findings is not supported by the evidence. The non-disability finding is not supported by the substantial evidence.**

**The ALJ stated at page 29 of the record "She (plaintiff) did not allege any reading problems at the hearing when under oath. The transcript of the hearing is silent as to whether either the plaintiff or the**

VE were sworn. Since the ALJ proceeded with the hearing, this Court will assume that the witnesses were sworn.

At page 471 of the record, the plaintiff testified at the hearing as follows:

> Q. You don't use the computer?
>
> A. No.
>
> Q. Do you go to church?
>
> A. I used to go to church, and I quit going to church. I can't. I don't read well.
>
> Q. When did you last go to church?
>
> A. Oh, its been, I'm going to guess two years.
>
> Q. Do you go to the movies?
>
> A. No sir.
>
> Q. Do you watch television?
>
> A. Very little.
>
> Q. Do you have any hobbies, do you sew, crochet, do crafts?
>
> A. No sir.
>
> Q. Do you listen to music or read or any

>> other hobby?
>
> A. I don't read well. I do listen to music. I like soft music because I don't like loud noises.

The ALJ's conclusion that plaintiff did not allege any reading problems at the hearing when under oath is not supported by the evidence and was omitted from the hypothetical question without any explanation .

A thorough review of the ALJ's decision reveals the ALJ relied on Dr. Miller's assessment in determining the RFC. It is uncontroverted that plaintiff frequently needed easy access to restrooms. When the VE was asked to consider a person "who would need to use those restroom facilities on the average of at least once per hour for five minutes every hour," he testified that the jobs he identified would not tolerate such a limitation. (Tr. 481). The Commissioner has failed to meet its burden at Step 5 of sequential evaluation. Its disability determination is clearly not supported by the evidence.

**Upon a *de novo* review of the record in light of defendant's objections, the Court finds that the Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge that the plaintiff's statement of errors be sustained and the matter remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four for an award of benefits.**

**Accordingly, the Court ADOPTS the Report and Recommendation of the United States Magistrate Judge. This case is TERMINATED on the docket of this Court.**

**IT IS SO ORDERED.**

                                            **s/Herman J. Weber**
                                      **Herman J. Weber, Senior Judge**
                                      **United States District Court**